We have our third case of, well it's now afternoon today, Coleman v. Superintendent Forest SCI, number 13-3427, Mr. Levin and Ms. Sofranti. Whenever you're ready. Good morning, Your Honors. My name is Peter Levin. I represent the appellant in this case, and I would like to reserve five minutes at the end. That's fine. If Your Honors, please, this is an appeal from the District Court's denial of a habeas corpus in this case, and this court has certified the following question, whether appellant's trial counsel was ineffective for failing to object at the conclusion of the court's charge regarding first degree murder and accomplice co-conspirator. I think, was it renew an objection? I'm sorry? Was it actually just renew? Well, I'm reading it was actually to renew, but the way the court's order on the certificate read is whether they were failing to object. Now, the attorney, Barbara McDermott, did object during the court's charge to the jury, and Judge Temin said she would get back to it at the conclusion. However, Judge Temin did not get back at the conclusion, and Barbara McDermott never objected. So the appellant's contention is that his counsel, Ms. McDermott, was ineffective for failing to object. The objection that she stated was, Ms. McDermott stated, my second objection, Your Honors, is that you gave the first degree murder instruction before you gave the conspiracy instruction. And every time you talked about the defendant, you also added in a person he conspired with. And what Ms. McDermott was originally objecting to is that the instructions indicated that my client could be found guilty of first degree murder. Because of the use of the word or. Either or, so that if the shooter had the specific intent to kill, then my client could be found guilty of first degree murder also. But the question then becomes whether there were later instructions, for example, on the special rule for vicarious liability that would have made clear that that later instruction required intent on behalf of Mr. Coleman, and not merely the other person who was the conspirator. Well, that is correct, but Judge Temin did give that instruction later on. But the position of the appellant is that because the judge gave the erroneous instructions, which we would say were erroneous so many different times, that that was embedded in the jury's mind. But you know, that happens. It happens that judges give the wrong instruction. And counsel brings it to the court's attention. Judge, you might have given the wrong instruction. Well, you correct it. Then you tell the jury this is the correct instruction. Here it is. And isn't that exactly what she, not to mention that she called it a special instruction. Well, except for the fact that Counsel McDermott never objected at the end when the judge said she was going to clarify. See, by accepting your argument, it means that a judge gives a wrong instruction but can never cure it. I'm sorry? A judge might give a wrong instruction but can never cure it. That's correct. Is that your position? No, no, no, no. I'm sorry. I misunderstood what Your Honor said. Our position would be that because the wrong instruction was given so many times either, I don't know if it could have been cured, but then the judge would have to say that the instruction that I gave on these four different occasions, either or, is totally wrong. And our position is that it would have been much easier for the jury to convict my client based on the erroneous instruction, because it was very difficult for the jury to figure out what my client's specific intent was. It was much easier for them to figure out what the intent of the shooter was. So I'm saying that basically the instruction was so ambiguous that it could not have been cured the way it was then unless the judge said, I'm going to withdraw, or jury, I want you to ignore the four instances I gave so far, that that is not a correct mistake. That is a misstatement of the law. If Judge Temin had said, okay, ladies and gentlemen of the jury, I made a mistake or a possible mistake in connection with the initial instruction, but when the judge goes through and says very clearly after giving the wrong instruction, just to let you know there is a special rule here, that you must find intent on behalf of Defendant Coleman, it seems like that pretty much cures it, doesn't it? Well, I don't think so, because the jury is hearing very, very long instructions on very, very complicated issues. And if the judge does not say something specifically to the jury, that they got to ignore the first four different instructions that she gave, I think the likelihood of them having a mistake is quite wrong. And even if the judge says, well, now I'm going to give you a special rule, then the jury is going to wonder, well, how does that fit in with what the judge said earlier about that it could be either the shooter or it could be Mr. Coleman. So our position is that the instructions were so ambiguous that the judge, the only way I believe that they could have been cured is if she said, you have to ignore what I said previously, that they were incorrect instructions. But I think the judge even said to Ms. McDermott, she says, I don't agree with you. She says, I have done this many times. I think it is correct. So I don't even know. That was her initial response. She said, look, I'll bring it up, I'll consider it, and it didn't happen. Correct. And I think it's very difficult for the jury to actually figure out what the intent of my client was. I mean, he didn't have the gun. I mean, basically he said to the shooter, you know, here are the keys to my car. So I think it was very, very difficult for the jury to have to figure out what the intent of my client was, whether he had the specific intent to commit first-degree murder. And as I said previously, it was much easier for them to decide that it was the shooter who had the specific intent. Isn't the correct standard that we have to look at the instructions as a whole, not parse it out in separate sections, but look at them all to see if the jury was properly instructed? Right. That is absolutely correct. But I'm saying at this point, because the instructions were so ambiguous, that in this particular case it's very, very difficult to say that the jury got the correct instructions. Yes, we can say it's looking at the jury instructions as a whole, but where they are given so many times wrong and they're not corrected, then I think that's where the problem is, and that's what my appellant was saying in this particular case. Tell me, you cite Smith v. Horn and Everett v. Beard, but in those cases there was an incorrect instruction that wasn't later cured. Here there was an incorrect instruction, and then later it was, no doubt about it, it was the correct instruction, you must find intent for this defendant. Right. Well, I know Everett v. Beard and the other, which are Third Circuit cases, I think that they were somewhat different than this situation, because although the judge did give the special rule in this case, although Judge Temin did say, I'm going to give you the special rule for first-degree murder, I'm saying that all of the instructions as a whole, taken as a whole, had to be ambiguous, again, because they were not corrected, and the jury is left in the mind with what they heard in the beginning, well, either this one or that one, and they weren't legal scholars sitting on the jury, and that had to have been in their mind, and then the judge at the end, obviously she did give this is the special rule, but they are still left in their mind with the either-or situation. All right. Well, let's hear from Ms. Affronti, and we'll get you back in rebuttal. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court, my name is Sue Affronti, and I represent the appellees in this case. I think the easiest place to start is with the standard here. It's a two-part standard, as you all have mentioned. There must be an ambiguity in the instruction, but also there must be a reasonable likelihood that the jury applied the instruction in a way that relieved the state of its burden of proof, and what we have here is an instruction that in its specific portions repeatedly talked about the special rule for first-degree murder. We also have another fact in this case, which I think is important. My opponent talked a lot about how unclear it was about the intent. What we do have here is we have a good conspiracy instruction, and we know that, and we know no one has ever challenged the conspiracy instruction, and we know that the jury found him guilty of conspiracy to commit murder. That's really the end of it. We don't have to hypothesize what the jury might have thought or if they might have been confused. We know that the jury properly instructed, specifically found, specific intent to kill under these facts. And under Brockington, which I cited, and actually in error, I failed to cite Bronstein v. Horn, which I think is relevant here. The site for that is 404F3D700, and it's 2005. And in Bronstein, that was the end of it. We had a clearly erroneous instruction. There was a lot of confusion. But the court found that once there was a finding on conspiracy to commit murder, that that was the end of the matter, and we do have that here. So I think those are very important points. Well, was it conspiracy to commit first-degree murder or conspiracy to commit third-degree murder? Well, Your Honor, they found him guilty of conspiracy to commit murder. My argument is murder means murder. I do know there is a conspiracy to commit third-degree murder. But if we're going to talk about juries using plain language, conspiracy means planning, murder means killing. It doesn't mean an aggravated assault that was somehow reckless in its actions. It's just if we're talking plain language, the plain language holds. And I would point out that in Bronstein, they didn't spend a lot of time on that either. Right. Any idea why, any indication as to why there wasn't a clarification made here by Judge Temin? My guess, I don't know why she didn't make the clarification, other than I think we have a pretty good clue. She opens her response to Ms. McDermott by saying, I disagree with you. The instruction was right. I did it the way I always do it. She does seem to backpedal on that, and it does sound like she's going to clarify it. But Ms. McDermott may very well have decided it wasn't worth pursuing because Judge Temin was fairly adamant on the point. Do you think, I mean, the instruction that Mr. Levin has pointed out is clearly wrong. Do you think she was reading pattern instructions before the clarification? Well, I would disagree with Ms. Gillivan that the instruction was wrong. I don't think it was wrong. It says that the defendant or a conspirator, a conspirator is a term that she flags for the jury. She says, and I'm going to define that for you later, if he is in fact a conspirator. And the error is that there is no error. The language isn't wrong. It's arguably confusing, I can agree with that, but it is not wrong. Okay. It's not wrong because, even though it's confusing. Yes, but that doesn't make it wrong, Your Honor. If she had said something like the defendant or his co-defendant had the intent, that would be wrong. That's absolutely wrong.  And I'm going to tell you what it means to be a conspirator. If they properly are instructed on what it means to be a conspirator, that's not incorrect. And thirdly, that the defendant or someone with whom he was a conspirator did so with specific intent to kill and with malice. So in that example, the jury can say, okay, the conspirator had the specific intent to kill and with malice, so we just transfer that to the defendant even though we don't think he necessarily had that intent. And if not, the defendant could be guilty of third degree instead of first degree. Yes, the defendant can be guilty of first degree instead of third. No, that's not my point. What you're saying is that the conspirator could have had the intent. If he was a conspirator, they shared the intent. Conspirator is properly defined, very clearly and repeatedly clearly defined. They had to share specific intent to be conspirators as to the first degree murder. You just said something, they had to share it, but this could be that the defendant, just logically, that someone with whom the defendant was a conspirator did so with a specific intent to kill. In other words, that the conspirator had the specific intent to kill, but assume for the moment that the defendant didn't. Nonetheless, the defendant is covered by this instruction for a first degree murder. No, because then he would not be a conspirator. That's why I'm saying it is confusing. I'm not arguing it's not confusing. Of course, jury wasn't given that option in a verdict sheet, I assume. No. Based on that instruction, based on the instruction that Judge Ambridge is writing. What option? I'm sorry. Define him to conclude that he did not have the specific intent. The specific intent was with the person with whom he was conspiring. Yes, and if he was a conspirator, he would have had to share the intent. The conspirator could have had first degree murder intent. The defendant was part of the conspiracy to do an act that violated the law, but did not have intent, in which case that would have made that person third degree murder conviction, correct? It would be, except I think she makes it abundantly clear later on in the instruction that to be a conspirator for purposes of first degree murder, you must yourself have the intent. Isn't that by far your better argument? Oh, absolutely. I think it absolutely is my better argument, yes. But I'm just saying I want to be very clear. Our position is it wasn't wrong. It was confusing, but it wasn't wrong. And frankly, as to prong one from Waddington, we talk about ambiguity, inconsistency, or deficiency. I think it is arguably ambiguous. Your comment that it was confusing but it's not wrong is that it is going to continue, you know, judges will continue using it. This was a very unique instruction, I would say, Your Honor. I don't think this was a standard instruction. I've never seen this special rule language that she uses. She actually goes out of the way. The special rule was good. Yes, I agree. But my point is the instruction at large seemed quite unique to Judge Temin, I would argue. But I certainly don't know. Ms. Sullivan's point, I think, is that it came too late. That is Ms. Sullivan's point. And my position is you have to look at the instruction as a whole. We need to know if there was a reasonable likelihood they misapplied it. I would argue that when you repeatedly give a much more specific instruction over and over again and provide examples, she provided specific examples here. If you find that Kennedy was the shooter and Coleman, you have to find that Coleman meant to kill also. And I would also point out the facts of this case. Mr. Levin really understates Mr. Coleman's involvement. We're talking about the instruction here. You're talking about something that's different in here. I'm specifically focusing on the instruction. Yes, I agree. But the facts of the case are relevant to focusing on the instruction. You guys said that in Williams, a due process analysis depends on the language of the charge. You should probably refer to the court as you guys. I apologize, Your Honor. You are absolutely correct. A panel of this court indicated that a due process analysis depends as much on the language of the charge as it does on the particularities of the given case. And I would argue here the particularities are awfully important. Mr. Coleman is described by the prosecutor in her closing as the catalyst. He's the one who starts it. He says, let's kill him. He tosses the keys to the shooter. The keys lead to the gun. We know that. He circles the block. The shooter comes out. He shoots him in the head. Coleman slows the car. The shooter jumps in. Coleman begins this process and he ends this process. He didn't have any small role in it. His only argument was, I didn't do it. I wasn't there. Because the intent argument was a loser. And that was just not the focus. Thank you. We'll go back to Mr. Levin. Your Honor, please, I have nothing further. Thank you very much. Thank you to both counsel. And we'll take the matter under advisement and call our last.